

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

May 8, 2022

**VIA ECF & E-MAIL**

Honorable Katharine S. Hayden, U.S.D.J.
United States District Court
Frank R. Lautenberg Post Office and U.S. Courthouse
2 Federal Square
Newark, NJ 07101

    Re:    ***United States v. Michael Cheff***
             **Crim. No. 22-209 (KSH)**

Dear Judge Hayden:

    Following a May 6, 2022, conference between the parties, the Government submits this letter regarding three evidentiary issues.

1. Defendant Michael Cheff ("Cheff"), a sergeant at the Paterson Police Department ("PPD"), plans to cross examine former PPD officers testifying for the Government. These may include Jonathan Bustios ("Bustios"), Daniel Pent ("Pent"), Eudy Ramos ("Ramos"), Frank Toledo ("Toledo") and Matthew Torres ("Torres"). The topics for cross examination include an act of excessive force in January 2015.

   That will open the door to Cheff's participation, by intentionally approving and signing false police reports related to any such incidents, in an effort to conceal that and any other acts of excessive force. The Government hereby both provides notice of the Government's intention to examine him on his role in that regard, pursuant to Fed. R. Evid. 404(b) (this evidence was provided to Cheff), and requests this Court to rule, pre-trial, that it may do so.

2.       Cheff plans to have his wife offer alibi evidence that, on November 14, 2017, the date he participated in the illegal police activities described in ¶4h of the Indictment, Cheff was home by 3:30 p.m. and could not have been involved when the illegal activities occurred.

          By volunteering to testify, Cheff's wife waives the adverse testimonial privilege, which should allow the Government to cross examine her on that topic (without, of course, asking about any privileged spousal communications). The Government hereby requests a ruling on that issue too.

3.       A pretrial ruling under Fed. R Evid. 609(b) no longer is necessary because Cheff has stated he will not seek to impeach Victim 1, another of the Government's witnesses, on his prior criminal convictions. If Cheff later changes his strategy, that ruling will again be needed.

## BACKGROUND

Cheff has been indicted for conspiring to deprive persons of their civil rights (18 U.S.C. § 241) and falsifying a police incident report (18 U.S.C. § 1519 and § 2). At trial, the Government anticipates that it will present evidence from the officers listed above to help prove that Cheff conspired with them and, as part of the conspiracy: (i) conducted illegal stops, searches and arrests, (ii) stole cash from their victims, and (iii) split the proceeds. Cheff then concealed these illegal police activities by, among other things, submitting and approving reports and paperwork that falsified the details. The officers who shared stolen money with Cheff will testify they did so to ensure that Cheff would not stop or report them for their illegal activities.

During one particular instance, took place on or about November 14, 2017, Cheff, Ramos, and Bustios conducted an illegal search of Victim 1's apartment, after he had been stopped and arrested right outside. When they searched the apartment, Cheff removed cash from a safe inside Victim 1's bedroom, gave Bustios a small fraction of that cash and told him to tag that small amount as evidence. Cheff also gave a portion of the stolen cash from the safe to Ramos and Torres at the police station.

# ARGUMENT

### A. Cheff's Concealment of the officers' Use of Excessive Force Is Admissible Under Fed. R. Evid. 404(b) Because It Helps Prove His Motive, Intent, Knowledge, and Absence Of Mistake.

Defense counsel claims it intends to cross examine the officers on acts of excessive force, including those alleged in PPD Internal Affairs Division complaints Division ("IA complaints") that the Government has produced. One of those IA complaints arose from an arrest that occurred during a domestic violence incident in March 2015, outside the period of the charged conspiracy). According to the IA Complaint, filed in July 2015, Bustios, Pent, and Ramos, used excessive force against the arrestee. None of the relevant police reports approved and signed by Cheff on that date contain any information about any use of excessive force. In a meeting with the Government, when discussing the March 2015 incident, Bustios indicated that certain acts of excessive force were used (a fact that is denied by the other officers).

Another IA complaint against Pent and Ramos arose from an arrest in January 2015 (hereinafter, the "January 2015 IA Complaint"). This arrestee was hospitalized on the date of his arrest as a result of injuries incurred during the arrest, specifically, injuries incurred when Pent used excessive force to pull the arrestee out of his vehicle. The PPD Incident Reports and Use of Force reports completed by Pent and Ramos indicated that the arrestee resisted and physically attacked and threatened the officers when they tried to remove him from his vehicle. Cheff signed those reports. Even though an investigation found the complaint unsubstantiated, in meetings with the Government, Pent admitted to using excessive force on the arrestee and subsequently pled guilty to using excessive force during this arrest.

There is a strong argument these incidents, none of which are set out in the allegations of the Indictment, should be excluded under Rule 403. Nonetheless, should they be used, that opens the door to evidence that Cheff helped conceal excessive force that was used and that he (i) approved false police reports that omitted any details of excessive force and (ii) helped coordinate misleading responses to the ensuing investigations.

### *Cheff's cover-ups are admissible for non-propensity purposes.*

If he adopts the course of seeking to cross the Government's witnesses on the excessive force allegations set forth above, Cheff will make his own role in the subsequent cover-up of these incidents relevant. The Government's examination of witnesses on these topics would not be used to show propensity to commit the acts alleged in the Indictment, but to prove why Cheff was offered, and why he accepted,

portions of the cash PPD officers admittedly stole from citizens on the streets of Paterson. Such cross by the Government goes to motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, all admissible under Fed. R. Evid. 404(b)(2). Even though Rule 404(b) is a rule of exclusion, "meaning that it excludes evidence unless the proponent can demonstrate its admissibility," it is also inclusive "in that there is no limit on" evidence used for non-propensity purposes. *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).

Evidence that Cheff helped conceal acts of excessive force shows he knowingly and willfully participated in the charged conspiracy. Cheff's defense may consist of denying any receipt of the stolen money, or that any receipt of money from the officers was nothing more than a non-consequential gratuity without any knowledge as to its illegal sources. A jury, however, could reasonably infer from the 404(b) evidence that there was no mistake or lack of knowledge on Cheff's part with respect to the illegal activities alleged in the Indictment, and that Cheff, aware of instances of excessive force, kept quiet about them, help conceal them and expected to be rewarded for doing so. That will help explain why, as a supervisor of employees paid less than he was, he knowingly accepted payments from the officers for his silence.

### *The proffered evidence is admissible under Fed. R. Evid. 403*

That clears the first of the step for admission of evidence under 404(b): Use for purposes other than propensity. The remaining steps are that the proffered evidence be relevant, its probative value must not be substantially outweighed by its potential for unfair prejudice to Cheff, and that such evidence be accompanied by an appropriate limiting instruction. *Repak*, 852 F. 3d at 241.

Facts are relevant when they tend to make a fact more or less probable. *See* Fed. R. Evid. 401; *Old Chief* v. *United States*, 519 U.S. 172, 178-179 (1997) (evidence is relevant if it is "a step on one evidentiary route" to proving an element). When evidence is relevant to a material issue in the case other than the defendant's character, including to explain the conduct of the police, it should be admitted. *United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010). This evidence is relevant to a chain of logical inferences, no link of which is that because Cheff kept quiet about uses of excessive force, he was more likely to have committed civil rights and falsifying of reports violations with which he is charged in the Indictment. *Id*.

Instead, once Cheff raises the issue of excessive force by the officers, he puts at issue his role in covering up that excessive force, which helps explain why he took part of the stolen money from the officers. That's not propensity, it's an explanation of his motive for participating in the crimes with which he is charged and he the absence of any

mistake about them. The excessive force evidence Cheff wants to introduce helps prove the case against him.

That's why this evidence does not entail any prejudice that substantially outweighs its probative value of the evidence. It reflects badly on Cheff, to be sure, but that's not the type of unfair prejudice about which Rule 403 is concerned. Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Adv. Committee Note; *United States* v. *Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012). Rule 403 only guards against prejudice 'based on something other than [the evidence's] persuasive weight.'") (citation omitted); *United States* v. *Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (unfair prejudice is "the sort which clouds impartial scrutiny and reasoned evaluation of the facts"); *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 664 (3d Cir. 2000) (en banc) (Rule 403 creates a presumption of admissibility and district courts may utilize the rule only rarely to cause the exclusion of evidence).

That Cheff accepted payments to help cover up illegal police activities, including acts of excessive force, is a rational, logical conclusion the jury could reach and no more prejudicial than any other aspects of the conspiracy with which he is charged. *United States v. Gilbert*, 229 F.3d 15, 26 (1st Cir. 2000) (a jury is less likely to misuse Rule 404(b) evidence to where the extrinsic acts are less inflammatory than the charged conduct); *United States v. Reese*, 933 F.Supp.2d 579, 582 (S.D.N.Y. 2013) (conduct no more sensational or disturbing than the charged offenses was not more prejudicial than probative). This evidence, which helps explain the conduct with which Cheff is charged, appeals to logic and reason and is not in any way substantially unfair to him (putting aside that Cheff himself seems to want to open the door to all this). "What is sauce for the goose should be sauce for the gander." *United States v. Seals*, 419 F.3d 600, 612 (7th Cir. 2005 (Posner, J., concurring).

Furthermore, the Court can cure any potential prejudice to Cheff by instructing the jury regarding the proper purposes of such evidence, and the Government has no objection to an appropriate limiting instruction. *See, e.g.*, *United States v. Mathis*, 264 F.3d 321, 329 (3d Cir. 2001). Where the jury is instructed to consider "other act" evidence only for the limited purpose(s) for which it is admitted, the danger of prejudice to the defendant resulting from the admission of such evidence is scant. *See, e.g.*, *United States v. Givan*, 320 F.3d 452, 461-62 (3d Cir. 2003); *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002); *United States v. Saada*, 212 F.3d 210, 224 (3d Cir. 2000).

### B. Graphic Videos and Photos Should Be Excluded Under Fed. R. Evid. 403.

Cheff intends to show videos (perhaps even photos as well) the Government provided in discovery that show individuals who were arrested and/or assaulted by

Bustios, one of the other officers, or an unidentified individual who is not part of this case, in graphic and sometimes bloody detail.[1] Any such evidence should be excluded under Rule 403 as unfairly prejudicial. The officers' acts of excessive force against individuals and any injuries incurred by arrestees are not in dispute and graphic evidence of them can only shock and inflame the jury.

None of the charges in this case involve excessive force. Instead, they are limited to illegal stops and searches, the theft of money from individuals who were stopped, searched, and arrested; and the concealment of those activities. Accordingly, in the first instance, there is a question even as to the relevance of the assaults under Rule 401.

More importantly, Pent, Ramos, and Toledo pled guilty to using excessive force and, if asked to admit to that on cross examination, could not (and would not) credibly deny it. Bustios would also admit to using excessive force. There is little, if any, probative value to showing these videos or photos regarding facts not in dispute. There is, however, substantial prejudice to doing so.

Videos and photos of the assaults and their aftermath have "a substantially greater risk of unfair prejudice than" testimonial evidence. *United States v. Bailey*, 840 F.3d 99, 121-24 (3d Cir. 2016). In *Bailey,* the Court of Appeals found that the Government's video evidence of a murder committed by the defendant's co-conspirators should not have been admitted because the probative value of the video was substantially outweighed by risk of unfair prejudice. The Court explained that the video evidence "was not merely cumulative, it was a graphic depiction of an event that had already been thoroughly proven." *Id*. at 122. It held had the district court conducted an on-the-record balancing with respect to the video, it could not have properly concluded it was admissible. *Id*. at 121. That's because, even though no blood was visible, it was nonetheless "highly disturbing" because it depicts a "ruthless" act carried out with "no regard" for the victim. *Id*.

The Court also found such graphic video evidence should not have been shown because there were alternative means of proving the charged offense. *Id*. at 122. Here, the assaults aren't charged and aren't disputed. A fortiori, graphic videos and photos of arrestees in this case are even less relevant than the prejudicial video evidence in *Bailey*. Under no circumstances can the defense show any probative value of graphic videos and photos of incidents that are not even in dispute and not at issue in the charged Indictment. That makes the photos and video "entirely redundant" in a highly prejudicial way because it reduces the value of such evidence solely to its "emotional

---

[1] The Government will provide a copy of these videos and photos to the Court. These items have already been provided to the defense.

impact." *Id*. at 123. Accordingly, the "relatively insignificant probative value" of the graphic evidence was "outweighed by its substantial prejudicial effect." *Id*. at 123-24.

### C. Cheff's Spouse Is Subject to Cross Examination.

Cheff has indicated his spouse will testify that Cheff returned home from work too early on November 14, 2017 to have participated in the robbery of Victim 1 that day. That voluntary testimony obviously does not implicate the adverse spousal testimonial privilege but it does permit the Government to cross examine her on that issue.[2] *Trammel v. United States*, 445 U.S. 40, 53 (1980) (witness spouse alone holds the adverse testimonial privilege and can waive it).

Nothing, however, prevents the Government from cross-examining her as to the subjects about which she testifies. *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F. 2d 1414, 1426 n.12 (3d Cir. 1991) (disclosing party cannot present a one-sided story to the court; any privilege is waived as to all communications on the same subject); *cf United States v. Delarosa*, 2012 WL 3778855 (D. Vt. Aug. 30, 2012), at *10 (explaining that defense attorney's decision not to call defendant's spouse to testify was not ineffective assistance of counsel because defendant's spouse would have been subject to government cross examination). The Government's cross examination about the topic of the wife's testimony (which will not include asking about any communications between her and Cheff) will not infringe on the confidential spousal communications privilege.

### D. A Ruling Precluding Impeachment Of Victim 1 Is Not Necessary.

Cheff now does not plan to cross examine Victim 1 about any prior criminal felony convictions. Unless he changes tactics, a ruling precluding that under Fed. R. Evid. 609(b) no longer is necessary.

---

[2] The adverse spousal testimonial privilege is a companion to, but distinct from, the privilege protecting confidential communications between spouses. The confidential marital communications privilege bars testimony concerning statements privately communicated between spouses. The privilege may be invoked by either the testifying or non-testifying spouse, even after dissolution of the marriage. The marital communications privilege is limited to (1) confidential (2) words or acts intended as communication to the other spouse, (3) during the course of a valid marriage. *See, e.g.*, *United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983); *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990) (citing *Pereira v. United States,* 237 U.S. 1, 6 (1954)); *United States v. Bad Wound*, 203 F.3d 1072, 1075 (8th Cir. 2000).

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Court should rule that, with respect to the evidentiary issue set forth above under Section A, the Government is permitted to elicit testimony and admit evidence of Cheff's participation in concealing acts of excessive force, and under Section B, that videos and photos of individuals who were arrested and/or assaulted by the officers should not be admitted.

                                                        Respectfully Submitted

                                                        PHILLIP R. SELLINGER
                                                        United States Attorney

                                                        */s/ Jihee G. Suh*

                                                   By:    Jihee G. Suh
                                                                 Thomas S. Kearney
                                                                 Assistant United States Attorneys

cc:    John D. Lynch, Esq.
       Paulette Pitt, Esq.
       *Counsel for Defendant*