UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA  :        Criminal No. 2:20-209

    Plaintiff,            :

    v.                   :

MICHAEL CHEFF            :        Hon. Katharine S. Hayden, U.S.D.J.

    Defendant.            :

---

## MEMORANDUM OF LAW IN SUPPORT OF POST-TRIAL MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL ON BEHALF OF DEFENDANT, MICHAEL CHEFF

---

John D. Lynch, Esq.
1814 Kennedy Boulevard
Union City, New Jersey 07087

Paulette Pitt, Esq.
97 Main Street, Suite 206
Woodbridge, New Jersey 07095

Attorneys for Defendant,
Michael Cheff

## TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................ ii,iii

Preliminary Statement ...................................................................................... 1

Statement of the Facts ...................................................................................... 1

Legal Argument:

Point I:   The Government Failed to Provide Sufficient
           Evidence as to Counts 1 and 2 of the Indictment.
           Judgments of Acquittal should be entered ................................. 10

           A. Standard of Review ............................................................. 10

           B. The Government Failed to Provide Sufficient
              Evidence that Michael Cheff joined the Conspiracy.
              A Judgment of Acquittal Should be Entered as to.
              Count 1 .................................................................................. 11

           C. The Government Failed to Provide Sufficient
              Evidence that Michael Cheff Knowingly
              Approved a False Report on November 14, 2017
              A Judgment of Acquittal Should Be Entered as to Count 2 ............... 13

Point II:  The Combined Errors Substantially Influenced the Outcome
           Of the Trial.  The Motion for a New Trial Should Be Granted ................. 14

           A. Standard of Review ............................................................. 14

           B. The Combined Errors Which Occurred Inside and
              Outside the Courtroom Require the Court to Grant
              The Motion for a New Trial .................................................. 15

           1. Errors Affecting the Jury ...................................................... 15

           2. The Prosecutorial Misconduct ............................................ 16

           3. The Jury Instruction as to Count 2 Was Improper ................ 16

Conclusion ...................................................................................................... 17

i

## TABLE OF AUTHORITIES

**Cases Cites**                                                                                    **Page**

United States v. Goldblatt,
813 F.2d 619, 623 (3d Cir. 1987).............................................................................6

United States v. Johnstone,
107 F.3d 200, 204 (3d Cir. 1997)............................................................................6

United States v. Molina-Guevera,
96 F.3d 698, (3d Cir. 1996)................................................................................7,8

United States v. Thomas,
946 F.2d 73, 76, (8th Cir. 1991) ..........................................................................9

United States v. Jackson,
443 F.3d 293, 297 (3d Cir.).................................................................................9

United States v. Wecht,
541 F.3d 493, (3d Cir. 2008).............................................................................9

United States v. Anderson,
108 F.3d 478, 481 (3d Cir. 1997)........................................................................10

United States v. Tiangco,
225 F.Supp. 3d 274, 279 D.N.J. 2016) .............................................................10

Jackson v. Virginia,
443 U.S. 307, 319 (1979)................................................................................11

United States v. Brown,
Criminal Docket Number 9Cr677(FSH) D.N.J. (2010)............................................11

Morissette v. United States,
342 U.S. 246, 252 (1952)...............................................................................11

United States v. Balintt,
258 U.S. 250, 251 (1922)...............................................................................11

United States v. Rigas,
605 F.2d 194, 206 (3d Cir. 2010)....................................................................11

United States v. Brodie,
403 F.3d 123, 134 (3d Cir. 2005)................................................................12

United States v. Castro,
704 F.3d 125, 139 (3d Cir. 2012).............................................................13

United States v. Brennan,
326 F.3d 176, 189 (3d Cir. 2003)..............................................................14

United States v. Copple,
24 F.3d 535, 550 n. 17 (3d Cir. 1994).................................................14,17

United States v. Stewart,
Criminal Number 2Cr832(FSH)(D.N.J. 2003) ...........................................14

**Statutes and Rules Cited**

18 U.S.C. §241........................................................................................1,3

18 U.S.C.  §§1519 and 2 ........................................................................1,3

Federal Rule of Criminal Procedure 29(c)................................................. 1

Federal Rule of Criminal Procedure 33 .................................................... 1

18 U.S.C. §242......................................................................................3,12

18 U.S.C. 1951(a) ..................................................................................... 3

Rule 33(a)................................................................................................ 14

Fed.R.Crim.P.33(a))................................................................................ 14

## PRELIMINARY STATEMENT

On May 26, 2022, the jury returned verdicts of "Guilty" against Michael Cheff for conspiring to deprive persons of their civil rights, in violation of 18 U.S.C. §241 (Count 1) and falsification of report dated November 14, 2017, in violation of 18 U.S.C. §§ 1519 and 2.  The Government failed to adduce sufficient evidence at trial to sustain its burden of proof.  Further, errors occurred inside and outside of the courtroom which, when combined, infected the jury's deliberations and and had a substantial influence on the outcome of the trial.

Michael Cheff now moves for the entry of a Judgment of Acquittal as to Counts 1 and 2 pursuant to Federal Rule of Criminal Procedure 29(c). Additionally, Michael Cheff moves for a New Trial pursuant to Federal Rule of Procedure 33.

## STATEMENT OF FACTS

### 1.  Jury Selection.

Potential jurors were pre-qualified to serve on the jury in two stages.  First, prior to reporting to the Courthouse, jurors were required to complete a questionnaire indicating that they were vaccinated against COVID-19.  (Transcript at 4).

1

Second, on May 16, 2022 and May 17, 2022, jurors were individually <u>voir dired</u> by the Court and counsel.  Each of the potential jurors were advised that the trial would be relatively short but would require the jurors to attend for approximately two and a half weeks.  (5; 17; 51; 70; 87; 128; 143; 146; 188; 271; 282; 300; 309; 339; 356).  Jurors who could not serve during the first week of June were excused.

Two jurors indicated pre-arranged plans for Memorial Day weekend and the end of the month.  (87; 146; 309).  They were allowed to remain as jurors in the event the trial finished before the Memorial Day weekend.  One of them flaked before the final jury was selected.

The final members of the jury were selected on May 18, 2022.  Out of an abundance of caution, four alternates were selected.

## 2.  **COVID Precautions.**

In addition to requiring proof of being vaccinated, jurors selected for the jury were required to wears masks during the trial of this matter.  (4).  Your Honor and counsel were required to wear masks during the trial.  Michael Cheff was required to wear a mask during trial.  Witnesses were allowed to remove their masks while testifying, as was counsel examining the witness.

Michael Cheff consented to this process rather than wait for the end of the COVID pandemic for a trial.

### 3.   **The Credibility of the Government's Witnesses.**

At issue in this case, more so than in the usual case, was the credibility of the Government's witnesses.  The Government called five former Paterson police officers to testify against their former Sergeant, Michael Cheff.

All of the officers- Jonathan Bustios, Daniel Pent, Eudy Ramos, Frank Toledo and Matthew Torres - had entered guilty pleas, cooperation agreements and are awaiting sentencing before this Court.

All five of the officers pleaded guilty to conspiracy to deprive persons of civil rights, in violation of 18 U.S.C. § 241.  Three of the former officers – Daniel Pent, Eudy Ramos and Frank Toledo - pleaded guilty to depriving individuals of their civil rights by using unreasonable force, resulting in bodily injury, in violation of 18 U.S.C. § 242.  Four of the former officers – Daniel Pent, Eudy Ramos, Frank Toledo and Matthew Torres - pleaded guilty to falsification of records, in violation of 18 U.S.C. § 1519.  Jonathan Bustios pleaded guilty to extortion under color of official right, in violation of 18 U.S.C. 1951(a).

During its opening the Government described them as "not angels." The Government assured the jury that the former officers' versions of events were consistent in six important matters (461-462).

During its rebuttal, after the defense had shown videos to the jury of the officers causing bodily injury to arrestees, conducting illegal searches and seizures, and counting large sums of cash, the Government described the Paterson police officers as having done "despicable acts." (1191, lines 4-6x). Undaunted by the irrefutable nature of the former officers' misdeeds, the Government again vouched for these witnesses by stating that since their stories did not match up, that shows that they were telling the truth. (1250, line 9 through 1251, line 3).

The officers laughed about their misdeeds. They put enhancements on some of the videos. They thought their conduct was funny at the time.

They didn't notify Sergeant Cheff they were stealing. (699-700). They didn't tell Sergeant Cheff their reports were false. (744). They kept Michael Cheff in the dark about their wrongful activities. "The less he knows, the better."

They were self-described as a four man squad. (607). They admitted to sending 9,000 text messages between themselves. Michael Cheff is referred to two times in texts in the course of the two year scheme.

4

They claimed they brought their deficient reports and reports omitting their criminal activity to Michael Cheff for his approval.  Yet, the report pertaining to a $10,000 heist by Matthew Torres is signed by Sergeant Lenoy.  (742; DE 46).

### 4.  <u>Michael Cheff's Management Style.</u>

Michael Cheff was referred to by these officers as the "cool boss."  (719). He did not ask a lot of questions.  He instructed the officers to file more complete reports to justify the actions taken.  (680).   He instructed the officers to report money that was taken from detainees and arrestees.  They went to Michael Cheff because he wouldn't jeopardize their job.  (508).

The Paterson Police Department was a lax environment.  Noone scrutinized the officers' behavior.  (689).

Sergeant Cheff gave former Officer Frank Toledo time off when he needed it because Officer Toledo's wife was being treated for cancer.

The officers claimed that because they "kicking up" money to Sergeant Cheff, he gave them better assignments.  Yet they testified they were assigned to the most dangerous sections of Paterson - areas full of guns and drugs.

Sergeant Cheff instructed the officers to stop their wrongdoing.  (700).  He did this on a few occasions.  (701).  Some of them did for awhile.  (742).  Others continued.

5.   <u>Structural Errors Occurring Inside and Outside the Courtroom.</u>

**a.   <u>No Inquiry was Made as to Whether Michael Cheff Elected to Testify in his Own Behalf.</u>**

At the conclusion of the Government's case, no inquiry was made of Michael Cheff as to whether or not he would be testifying in his own behalf.

**b.   <u>The Jury Instruction Provided for Count 2 Was Erroneous.</u>**

The defense objected to the Government's proposed jury instruction pertaining to Count 2.  The defense requested that the Court read the statutory language and advise the jury that the Government had to prove four elements.

The Court rejected the defense proposed charge and provided the charge requested by the Government to the jury instead.  This charge improperly shifted the burden of proof away from the Government.  In four locations, the instruction stated what the Government did <u>not</u> have to prove.  (1282-1283).

When instructing the jury, the district court must provide "a clear articulation of the relevant legal criteria." <u>United States v. Goldblatt,</u> 813 F.2d 619, 623 (3d Cir. 1987). The jury instructions must, therefore, be structured so as to avoid confusing or misleading the jury. <u>United States v. Johnstone,</u> 107 F.3d 200, 204 (3d Cir. 1997).

The language requested by the Government is appropriate in a Third Circuit brief or opinion.  It is misleading to a jury to state that the Government does not have to prove certain things.  It was error to include this language in the jury charge.

### c.   The Government's Rebuttal Summation was Improper.

The defense objected to the rebuttal summation of the Government as being a second summation and not a proper rebuttal.  (1254).  The Court agreed.  (1254).

### d.   The Government Improperly Vouched for its Witnesses.

In its opening, the Government stated that the five former Paterson police officers were "not angels" but they should be believed because their stories matched up in six important matters.  (461-462).

In rebuttal, the Government stated that the stories of the former Paterson police officers did not match up but that was an indication that they were telling the truth.  (1250, line 9 through 1251, line 13).

The Government improperly vouched for its witnesses with these remarks.

In United States v. Molina-Guevera, 96 F.3d 698 (3d 1996), the Third Circuit held that the district court should have granted a mistrial because of improper vouching by the government in its closing remarks.  Id. at 699.  In an

attempt to bolster the testimony of a customs agent, the prosecutor in *Molina-Guevara* represented to the jury that a certain customs investigator would have supported the agent's version of events if he had testified, and that the agent did not lie on the stand.  Id. at 704.

Here, too, although contradicting itself, the government was vouching for the credibility of its witnesses.   As prosecutors, they put their imprimatur on the testimony of five admitted liars.

A mistrial was declared in Molina-Guevera.  The same result is appropriate here.

### e.  **Numerous Errors Occurred During Jury Deliberations.**

During jury deliberations, the jury sent out several notes pertaining to its progress.  Incorrect jury instructions were provided in response to these notes.

One of the earlier notes indicated that the jury was at an impass (sic) as to Count 1.  This note was received at 4:37 p.m.  A modified Allen charge (Model Jury Instruction 9.08)  was given rather than a deadlock charge (Model Jury Instruction 9.05).

In addition, an objection was raised to keeping the jury late on Thursday, May 26, 2022.  Defense counsel was concerned that a juror was surrendering her convictions in order to finish deliberations that day.  (1339, lines 20-24).  At that

point in time, a question was raised as to Juror # 8 who had plans to move "at the end of the month."

The jury had not been deliberating that long at that point.  They could have been sent home and told to return the next day.  Two alternates were available in case Juror # 8 decided to move as planned.  The jury had an additional day Friday, May 27, 2022.  They had committed to serving as jurors though the first week in June 2022.

In deciding if an Allen charge is impermissibly coercive, the court should consider the length of time the jury deliberated after receiving the charge in relation to the total time of deliberation and any other indicia of coerciveness. United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991).  In United States v. Jackson,  443 F.3d 293, 297 (3d Cir.), the Third Circuit emphasized that jurors should not reach a verdict for reasons other than the evidence presented to them. See also United States v. Wecht, 541 F.3d 493, (3d Cir. 2008).

Jury Note # 5 was received at 6:20 p.m.  It stated "we have exhausted our efforts to reach a verdict.  We don't see a path that will change that."

Less than an hour later, at 7:15 p.m. Juror Note # 7 indicated that the jury was closer to a verdict on both counts.

No inquiry was made on this issue other than a polling of the jury.

9

The timing of the jurors' notes, the lateness in the day and the use of the words "impasse," "exhausted" and no path forward provide indicia of potential coerciveness during the jurors' deliberations.  Less intrusive options were available and were not exercised.  A new trial is warranted.

## LEGAL ARGUMENT

### POINT I

**THE GOVERNMENT FAILED TO PROVIDE SUFFICIENT EVIDENCE AS TO COUNTS 1 AND 2 OF THE INDICTMENT. <u>JUDGMENTS OF ACQUITTAL SHOULD BE ENTERED.</u>**

A.  <u>Standard of Review.</u>

A defendant who asserts that there was insufficient evidence to sustain a conviction faces a "very heavy burden."  <u>United States v. Anderson</u>, 108 F.3d 478. 481 (3d Cir. 1997).  In considering this motion, "the Court cannot substitute its judgment for that of the jury.  <u>United States v. Tiangco</u>, 225 F.Supp. 3d 274, 279 (D. N.J. 2016).

The Court "must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor."  <u>Anderson</u>, <u>supra</u>, at 481.

After doing so, " . . . the court must uphold the conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Conversely, if the Government fails to adduce sufficient evidence of every element of the offense, a judgment of acquittal must be entered.  See e.g. United States v. Brown, Criminal Docket Number 9Cr677(FSH) D. N.J. 2010).

**B.  The Government Failed to Provide Sufficient Evidence that Michael Cheff Joined the Conspiracy.  A Judgment of Acquittal Should Be Entered as to Count 1.**

A fundamental principle of criminal law if that "wrongdoing must be conscious to the criminal." Morissette v. United States, 342 U.S. 246, 252 (1952). A defendant must be "blameworthy in mind" before he can be found guilty. Id.  A guilty mind is a necessary element in the indictment and proof of every crime. United States v. Balint, 258 U.S. 250, 251 (1922).

Equally important is the fundamental principle that guilt is individual.

A conspiracy is an agreement to commit a criminal offense.  United States v. Rigas, 605 F.3d 194, 206 (3d Cir. 2010).    There must be a meeting of the minds of the co-conspirators.  Id. at  207.  The Government must prove that the

11

conspirators agreed on the "essential nature of the plan." <u>United States v. Brodie,</u>

403 F. 3d 123, 134 (3d Cir. 2005).

There was no evidence that Michael Cheff engaged in the use of excessive

force.  Unlike Ramos and Pent, he is not charged with a violation of 18 <u>U.S.C</u>. 242.

There is no evidence that Michael Cheff stopped individuals in Paterson

without reasonable suspicion they were committing a crime.  There is no evidence

that Michael Cheff threatened and lied to individuals in Paterson to obtain their

consent to search their residences.

He was the last member of the Paterson Police Department to arrive at

Plesinger Place when Jose Acevedo-Sanchez was placed under arrest in the back

seat of Matthew Torres's patrol car.  He was briefed on what had happened.  No

specifics were provided as to what he was told.

Mere presence at the scene of a crime is not sufficient proof of membership

in a conspiracy.

Michael Cheff was present in Jose Sanchez-Acevedo's apartment when the

officers spoke to Jose's mother in Spanish.   There is no evidence that Michael

Cheff speaks or understands Spanish.

Michael Cheff was one of many superiors to the members of the Robbery Squad.  They engaged in and pleaded guilty to falsification of records.  Their credibility is suspect.

Judgment of acquittal should be entered as to Count One.

**C.   The Government Failed to Provide Sufficient Evidence that Michael Cheff Knowingly Approved a False Report on November 14, 2017.  A Judgment of Acquittal Should Be Entered as to Count 2.**

In United States v. Castro, 704 F. 3d 125, 139 (3d Cir. 2012), the Third Circuit reversed a conviction for making a false statement where the statement made by the defendant was literally true.  Here, too, the statements made in the report of November 14, 2017 were literally true and a judgment of acquittal should be entered.

Jose Acevedo-Sanchez did run when he saw police cars approaching.  (764).  There was a chase.

Jose Acevedo-Sanchez did drop something when he was being chased.  (767).

Matthew Torres, not Sergeant Cheff, told Bustios and Ramos to get Joe Sanchez-Acevedo to sign a consent to search form.  (541).  Bustios, not Sergeant

13

Cheff, opened the safe.  (659).  Bustios, not Segeant Cheff ,was seen  carrying a

bag when he left Plesinger Place.  (667).

The information added to the report by Michael Cheff was literally true.

The conviction should be set aside.

## **POINT II**

## **THE COMBINED ERRORS SUBSTANTIALLY INFLUENCED THE OUTCOME OF THE TRIAL.  THE MOTION FOR A NEW TRIAL SHOULD BE GRANTED.**

### A. **Standard of Review.**

Rule 33(a) provides that the court may vacate any judgment and grant a new

trial if the interest of justice so requires.  Fed. R. Crim. P. 33(a).  A motion for a

new trial should be granted when "there is a serious danger that a miscarriage of

justice has occurred – that is, an innocent person has been convicted."  United

States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003).  A new trial must be granted

"when the errors, when combined, so infected the jury's deliberations that they had

a substantial influence on the outcome of the trial."  United States v. Copple, 24

F.3d 535, 550 n. 17 (3d Cir. 1994).  See e.g. United States v. Stewart, Criminal

Number 2Cr832(FSH) (D. N.J. 2003)  (motion for new trial granted where

Government failed to turn over impeachment material questioning the credibility

of a confidential informant and failed to turn over information about benefits provided to the confidential informant).

### B. The Combined Errors Which Occurred Inside and Outside the Courtroom Require the Court to Grant the Motion for a New Trial.

#### 1. Errors Affecting the Jury.

Two trial days were spent identifying pre-qualified jurors. Jurors who were available to sit for two and a half weeks were pre-qualified. Jurors with economic hardships or who were unavailable through the first week in June were excused for cause.

Two jurors indicated prior plans for Memorial Day weekend and for the end of the month. One of these jurors was excused before the final jury was selected. The other remained on as Juror #8.

During deliberations, notes were received from the juror indicating they were at an impasse (sic) on one count and had reached a verdict on the other count.

At the time the jury started sending a series of notes, the jury had only deliberated for a day and a half.

The jury received two modified Allen charges.  The Court overlooked two other viable options.  One was to send the jury home for the day and tell them to return the next day.  The other was to question the jurors about pressure they were under to surrender their convictions and reach a verdict.

Neither of these options were allowed.  A deadlock charge was not read to the jury.

Counsel raised an objection.  The Court rejected it erroneously.

## 2.   **The Prosecutorial Misconduct.**

The prosecutor improperly vouched for its witnesses during its opening and summation.

In addition, the prosecutor's rebuttal summation was improper.  As a result, the jury was misled.

## 3.   **The Jury Instruction as to Count 2 Was Improper.**

The jury instruction as to Count 2 erroneously shifted the burden of proof away from the Government.  This jury could have been misled or confused as a result.

## CONCLUSION

By federal standards, this was a short trial. Every error counted. Every error hurt the defense. Every error had the potential of "so infect[ing] the jury's deliberations that they had a substantial influence on the outcome of the trial." United State v. Copple, 24 F.3d 535. 550 n. 17 (3d Cir. 1994).

The Government provided insufficient evidence as to Michael Cheff's guilt on Counts 1 and 2. The motion for judgment of acquittal as to Counts 1 and 2 should be granted.

Alternatively, a new trial should be ordered.

Respectfully Submitted,

s/ John D. Lynch

s/ Paulette Pitt