UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

United States of America        :

    v.                              :   Crim. No. 20-209 (KSH)

Michael Cheff                   :

OPPOSITION TO DEFENDANT'S
MOTION FOR BAIL PENDING APPEAL

PHILIP R. SELLINGER
Attorney for the United States
District of New Jersey
970 Broad Street
Newark, NJ  07102-2535
(973) 645-2700

By: Jihee G. Suh
Assistant U.S. Attorney

Thomas S. Kearney
Assistant U.S. Attorney

Bruce P. Keller
Special Counsel to the U.S. Attorney


**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................... ii

Preliminary Statement ................................................................................. 1

I.   Cheff Can't Meet The Applicable Standard. ............................................... 2

II.  Cheff's Supposed Trial Errors Are Illusory And Insubstantial. .................... 4

III. Cheff's Supposed Sentencing Errors Are Equally Insubstantial. ................. 8

Conclusion................................................................................................. 13

**TABLE OF AUTHORITIES**

**CASES**                                                                                              **PAGE(S)**

*Albrecht v. Horn,*
  485 F.3d 103 (3d Cir. 2007) ................................................................................... 3

*Convoy v. Leone,*
  316 F. App'x 140 (3d Cir. 2009) ............................................................................. 2

*Laborers Int'l Union of N.A. v. Foster Wheeler Corp.,*
  26 F.3d 375 (3d Cir. 1994) ..................................................................................... 2

*United States v. Brand,*
  224 F. Supp. 3d 437 (E.D. Pa. 2016), *aff'd,* (3d Cir. Jan. 12, 2017) .............. 4

*United States v. Fattah,*
  914 F.3d 112 (3d Cir. 2019) ................................................................................... 7

*United States v. Ferriero,*
  2016 WL 1030849, (D.N.J. Mar. 14, 2016), *aff'd,* (3d Cir. Mar.29, 2016)....... 8

*United States v. Goff,*
  501 F.3d 250 (3d Cir. 2007) ................................................................................. 12

*United States v. Hoffecker,*
  530 F.3d 137 (3d Cir. 2008) ................................................................................... 2

*United States v. Jahagirdar,*
  466 F.3d 149 (1st Cir. 2006) ................................................................................ 12

*United States v. Johnson,*
  903 F.2d 1084 (7th Cir. 1990) .............................................................................. 12

*United States v. McCourty,*
  562 F.3d 458 (2d Cir. 2009) ................................................................................... 7

*United States v. Miller,*
  753 F.2d 19 (3d Cir. 1985) ................................................................................. 2, 3

*United States v. Nasir,*
  17 F.4th 459 (3d Cir. 2021) ................................................................................... 9

*United States v. Powell,*
  444 F. App'x 517 (3d Cir.2011) ............................................................................ 8

*United States v. Scanzello,*
  832 F.2d 18 (3d Cir. 1987) ................................................................................ 7

*United States v. Smith,*
  793 F.2d 85 (3d Cir. 1986) ................................................................................ 3

*United States v. Voigt,*
  89 F.3d 1050 (3d Cir. 1996) .............................................................................. 6

**Statutes**

18 U.S.C. § 241 .................................................................................................... 9

18 U.S.C. § 1519 .................................................................................................. 9

18 U.S.C. § 3143(b)(1)(B) .................................................................................... 2

**Rules**

U.S.S.G. § 3C1.1 ............................................................................................. 8, 9

U.S.S.G. § 5K1.1 ............................................................................................... 10

## Preliminary Statement

Defendant Michael Cheff's arguments in support of his motion for bail pending appeal and for a stay of his November 1, 2022 reporting date, Dkt.#106-1, should be denied for two overarching reasons.  First, his supporting brief is virtually devoid of reasoned explanations, record cites or controlling authority.  It is so bare bones as to fall into the category of cases holding such scanty, under-developed arguments need not even be considered.

Second, even taking the substance of the issues he claims he will raise on appeal into account, none of those issues meet the stringent governing standard for bail pending appeal.  As to the supposed trial errors, they are not errors at all.  Instead, these arguments reflect only Cheff's self-serving view of the strength of the evidence against him.  On appeal, however, the Third Circuit will accord the jury's view of the Government's case substantial deference and Cheff's little at all.

As to the supposed sentencing errors, again, there are none.  This Court properly applied the enhancement for obstruction of justice, which flowed from the nature of Cheff's crimes -- covering up for the rogue police officers he supervised for his own financial benefit.  Nor was any unwarranted disparity created between Cheff's sentence of imprisonment and the one received by his co-conspirator who at least attempted to do the right thing by admitting his guilt and cooperating early on as the conspiracy began to unravel, something Cheff, to this day, refuses to do.

## I.   Cheff Can't Meet The Applicable Standard.

Bail pending appeal cannot be granted "***in the absence of exceptional circumstances***." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) (emphasis added). Congress codified this stringent standard by requiring, among other things, that the defendant identify a "substantial question of law or fact … likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b)(1)B). Accordingly, "[o]nce a person has been convicted and sentenced to jail, ***there is absolutely no reason*** for the law ***to favor release*** pending appeal" unless specific exceptional circumstances have been identified as raising a substantial question. *Miller*, 753 F.2d at 22 (emphasis added).

None of defendant Michael Cheff's arguments, Dkt.#106-1, comes close to meeting that exacting test. Instead, he levels a litany of undeveloped, fragmented, scattershot and otherwise incomplete arguments so skeletal as to merit summary rejection. *United States v. Hoffecker* 530 F.3d 137, 162 (3d Cir. 2008) (warning against passing arguments that amount to little more than assertions); *see Convoy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (same; arguments based on "one conclusory sentence"); *Laborers Int'l Union of N.A. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (passing references to issues don't suffice to bring them before a court for its consideration). That's because, as has been noted in the past, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Hoffecker,* 530 F.3d at 162.

2

For example, despite complaining about purported trial errors, Dkt.# 106-1 at 15-17, Cheff discusses none in any detail, relying instead on conclusory statements that aren't even unequivocal assertions, *id.* at 15 (contending that whether Cheff "shared the same *mens rea* as his co-conspirators "is questionable"); *id.* at 17 ("corroboration would have been helpful"); *id.* at 16 (complaining that the Government obtained a conviction without calling certain witnesses). On their face, those are not the sort of extraordinary issues that are "fairly debatable" or "fairly doubtful," *United States v. Smith*, 793 F.2d 85, 88-89, 92 (3d Cir. 1986), because they are (1) "novel" or not "decided by controlling precedent," *Miller*, 753 F.2d at 23, and (2) "significant," in the sense that they are something on which reasonable judges could differ, *Smith*, 793 F.2d at 88-89, 92.

Perhaps the best example of how far short Cheff's motion falls is that, even though he argues a "bad jury instruction" warrants reversal, Dkt.#106-1 at 16, he does not bother to identify any particular instruction or how it supposedly departed from those approved of in this Circuit.[1] Instead, his motion consists entirely of a bare bones recycling of unsuccessful arguments made during trial and in his post-trial submissions (supplemented only by his complaints about supposed sentencing errors). That's not enough. In

---

[1] Moreover, Cheff did not object to any instruction as delivered to the jury. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007).

particular, Cheff's reliance on issues like witness credibility and supposed inadequate corroboration can't possibly create substantial questions: They rest on "unremarkable evidentiary determination[s] ... based on settled law." *United States v. Brand*, 224 F. Supp. 3d 437, 442 (E.D. Pa. 2016), *aff'd,* 3d Cir. No. 16-4411 (order filed Jan. 12, 2017). Here, as was true in *Brand,* Cheff's motion fails because it consists of a series of "shot-gun references to ... appellate issues, without more" that simply don't establish there is a substantial question for appeal. *Id.* His motion for bail pending appeal and a stay of his November 1, 2022 reporting date should be denied.[2]

## II.  Cheff's Supposed Trial Errors Are Illusory And Insubstantial.

None of the purported errors at trial to which Cheff points amount to substantial issues on which the Third Circuit is likely to reverse. Instead, they are essentially run of the mill rehashes of his unsuccessful arguments to the jury and, post-conviction, to this Court.

For example, Cheff contends it was "questionable" as to whether he shared the same *mens rea* as his co-conspirators. But he bases his argument on what his co-conspirators did without him. Cheff fails, however, to address what his co-conspirators did **with** him. He avoids any discussion about his participation in the cover up of various incidents of theft and writing false reports, including the Plesinger Place search. *See* Tr. at 825:1-827:2 (Bustios: Cheff instructed him to change some words in the narrative section of the

---

[2] Because Cheff clearly does not meet the substantial issue standard, this opposition does not address the other requirements he also must satisfy.

4

incident report for the Plesinger Place theft that related to falsely creating "a fact of probable cause for the search"); Tr. at 978:1-18 ("[Cheff] told us to start tagging some of the money, because it was looking too suspicious and Internal Affairs was looking into it."). In fact, there was testimony from multiple sources, including both the officers then under Cheff's command and a civilian relating to Cheff's direct participation in the illegal search of the Plesinger Place apartment by stealing the money he found there and covering it up. Dkt.#90 at 7-10.

The Government's opposition to Cheff's Rule 29 and 33 motions described further evidence regarding Cheff's *mens rea*. Dkt.#90 at 4-10. A brief recap shows how much the jury had to work with:

- Officer Ramos testified Cheff was "part of the team" of officers who stole money from suspects, never tagged it as evidence, and Cheff received part of the stolen money as a kick back for allowing that to continue (Dkt.#90 at 4-5; Tr. at 962:25-963:16, 964:21-971:7).

- Officer Pent testified that Cheff did not report that illegal conduct because "we had an understanding with him. . . if we took care of him, he would take care of us, he wouldn't bother us as far as any arrests or activity that we were doing . . . whatever we wanted to do, we could do it." (Tr. at 719:4-720:14).

- The officers recognized that for Cheff's continued protection they had to pay a "Cheff tax" (Tr. at 869:16-871:19).

- Cheff knowingly advanced the conspiracy by approving and signing false reports and other paperwork that omitted, or lied about, the Officers' illegal activities. (Tr. at 508:4-24; 509:13-16; 709:5-715:17; 717:2-15; 851:20-852:11; 871:22-872:24; 1071:5-8; Gov. Exs. 103, 119, 121).

This and other evidence permitted a rational jury to reject Cheff's arguments about his supposed ignorance of the conspiracy to deprive citizens

5

of Paterson of their civil rights. *See* Tr. at 1230:11-17, 1237:10 (members of the Robbery Squad withheld information about their criminal activity from all of their supervisors, including Cheff, whom defense counsel portrayed as just an "easy-going" boss); Tr. at 1232:13-16 (Cheff didn't know what was going on when co-defendant Ramos spoke in Spanish to the mother of one of the victims of the Robbery Squad); Tr. at 1237:11-12 (the Robbery Squad kept information away from Cheff because they allegedly agreed, "the less he knew, the better"); Tr. at 1237:15-16 (making the same lack-of-corroborating-texts argument Cheff makes to support his bail motion).

These contentions fail to create any substantial issue on appeal because of the deference the Third Circuit must accord a jury's own view of the evidence. *See United States v. Voigt*, 89 F.3d 1050, 1091 (3d Cir. 1996) ("Given our deferential standard of review … along with the settled rule that we draw all reasonable inferences in favor of the jury's verdict… we may not substitute our (or Voigt's) judgment for that of the jury; Voigt's legal sufficiency challenge is essentially a futile attempt to rehash his closing argument.") (citations omitted).

Cheff also argues there was a lack of evidence corroborating the credibility of the Government's witnesses. Dkt.#106-1 at 15-17. Once again, that ignores:

- The contemporaneous texts that place Cheff at the scene of the Plesinger Place incident. Gov. Exs. 201 and 202.

- The testimony from Bustios that Cheff concealed what he, Bustios, Ramos and Torres all knew: There was no legal basis to enter the

6

- Plesinger Place apartment and that Bustios had never read nor explained the consent form in its entirety to the apartment residents. Gov. Ex. 103; Tr. at 597:16-25; 828:11-23; 987:10-25.

- The officers were splitting up the stolen money with each other and "kicking up" stolen money to Cheff, Tr. at 499:8-12; 718:5-720:25; 962:25-963:16, 968:6-971:7, and Cheff's knowledge that the officers were repeatedly stealing money, which his co-conspirators referred to as the "mango." Gov. Ex. 202 (Bustios text indicating: "Only reason I tagged that much mango was because Cheff made me"); 212 (text referring to a "mango diet").

Moreover, as a general matter, attacks like Cheff's on a jury's credibility determinations cannot possibly meet the substantial issue standard, for the same reasons such attacks fail in the Rule 33 context: "it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment . . . [such as] where testimony is patently incredible or defies physical realities[.]" *United States v. McCourty*, 562 F.3d 458, 475-76 (2d Cir. 2009)). On appeal, the Third Circuit will resolve all credibility issues in the Government's favor, *United States v. Scanzello*, 832 F.2d 18, 21 (3d Cir. 1987) and must affirm unless no reasonable juror could find the evidence sufficient to support the defendant's guilt beyond a reasonable doubt. *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019).

As for jury deliberations, the Government previously has explained that Cheff repeatedly consented to the way they proceeded. Dkt.#90 at 32-35. He cannot possibly establish a substantial issue based on his own consent.

Finally, Cheff suggests that the cumulative weight of these supposed errors creates a substantial issue. That's wrong. It is well-established that the cumulative effect of non-errors is the same: "as the saying goes, zero plus zero

7

equals zero." *United States v. Powell*, 444 F. App'x 517, 522 (3d Cir.2011) (not precedential).

In short, for much the same reasons as these same arguments were found lacking in connection with Cheff's Rule 29 and 33 motions, they cannot present a substantial argument that is likely to result in reversal, order of a new trial, or a reduced sentence. *United States v. Ferriero*, 2016 WL 1030849, at *10 (D.N.J. Mar. 14, 2016), *aff'd*, 3d Cir. No. 15-4064 (order filed Mar.29, 2016).

### III.   Cheff's Supposed Sentencing Errors Are Equally Insubstantial.

Cheff argues his 33-month sentence of imprisonment creates a substantial issue for appeal.  He's wrong.[3]

Cheff begins with his view that it was error to apply a two point obstruction of justice enhancement, based on the contention that the report he falsified can't support the enhancement because it was "part and parcel" of his underlying offense of conviction.  Dkt.#106-1 at 11.

The text of the Guidelines and application notes could not be clearer and the enhancement plainly applies. *See* U.S.S.G. § 3C1.1 ("increase offense level by 2 levels" when "***the obstructive conduct related to . . . the defendant's***

---

[3] Cheff emphasizes this Court commented that his objections to the application of a two point obstruction of justice enhancement were "not frivolous."  Dkt. #106-1 at 11.  But as he notes elsewhere, the standard for a substantial issue is much higher than that which would be 'necessary to a finding that it was not frivolous."  Dkt.#106-1 at 11 (citation omitted).  He hasn't met that higher standard with any of his sentencing issues.

***offense of conviction*** and any relevant conduct") (emphasis added).  That unambiguous language plainly makes the enhancement applicable.

Cheff cites *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (en banc), Dkt.#106-1 at 12, but that case is irrelevant.  *Nasir* addresses the extent to which commentary in the Guidelines can govern when the text of the Guideline itself is unambiguous.  But when, as here, a court bases a conclusion that the enhancement applies on the plain language itself, *Nasir* has no applicability.

This Court did not, as Cheff also suggests, place undue emphasis on the Application Notes.  To the contrary, it carefully distinguished between the commentary and the language of the Guideline itself.  Sept. 12, 2022 Tr. at 14-15 (the "application note one just repeats what the adjustment is;" the notes only serve to provide "nonexhaustive example[s];" "falsifying a police report … in and of itself" satisfies the language of the Guideline).

Here, as this Court made clear, it was the "government's evidence and what the jury convicted" Cheff of doing that fit neatly within the Guideline.  *Id.* at 18.  Application Note 8 expressly provides that if the defendant is convicted both of an obstruction offense (here, 18 U.S.C. § 1519) and an underlying offense (18 U.S.C. § 241), the obstruction count offense will be grouped with the one for the underlying offense, justifying the imposition of a two-level obstruction enhancement for the grouped counts—resulting in Cheff's level 20.  Cheff's participation in the falsification of the incident report for the 11/14/17 Plesinger Place theft was therefore covered conduct under § 3C1.1.  Because Cheff was convicted of both a civil rights violation (18 U.S.C. § 241) ***and*** for

9

participating in the falsification of a PPD Incident Report concerning the 11/14/17 Plesinger Place theft, a Chapter Three adjustment for obstructing or impeding the administration of justice was required.[4]

Cheff also objects to what he claims was an unwarranted sentencing disparity with his supposedly "similarly situated" co-defendant, Matthew Torres. Dkt.#106-1 at 9. Not so.

Far from being "similarly situated," Cheff and Torres were different in the following ways. First, unlike Cheff, Torres accepted responsibility for his conduct, which reduced his total offense level. U.S.S.G. § 3E1.1(a) and (b). Because that serves "legitimate societal interests," Torres earned an adjusted offense level three levels lower than Cheff.

Second, Torres provided substantial assistance in the investigation and prosecution of the other co-conspirators, including Cheff, culminating in his taking the witness stand, providing testimony in open court against Cheff, his former superior officer, and subjecting himself to cross examination. Based on this cooperation, the government moved, pursuant to U.S.S.G. § 5K1.1, for a downward departure from the applicable guidelines. No such motion was made or warranted on behalf of Cheff.

---

[4] Moreover, Cheff already has filed a notice of appeal and there is no reason to believe the Third Circuit will not resolve any issues he raises quickly enough so that, even were he to obtain appellate relief in the form of a lower sentence not enhanced by the Guideline, he won't still have that portion of his sentence left to serve.

Third, as this Court emphasized, Torres distinguished himself from all of the other co-conspirators in this case. At trial, this Court heard testimony from Torres about being instructed, along with co-conspirator Toledo, to falsify information in an official police report regarding an arrestee who provided information about a homicide. Tr. at 518:13-530:19, 531:17-532:8. After being called in by the Passaic County Prosecutor's Office and questioned about the report, but prior to cooperating with the FBI regarding the instant criminal conduct, Torres admitted to falsifying the report. The Court also focused on Torres' attempts to leave the Paterson Police Department and/or be re-assigned off of the Robbery Squad.

While Torres's conduct was far from perfect, it contrasts sharply with that of Cheff, who made no efforts to report wrongdoing, correct the behavior of the Robbery Squad or leave the department. Far from it: He preferred to profit from his underlings' kicking up money to him and, when the opportunity presented itself, to directly line his own pockets when, on at least two occasions, and in the presence of his subordinates, he stole money from individuals living or driving through Paterson. Moreover, unlike Torres, Cheff was part of the command structure and helped to institutionalize these corrupt activities by modeling corrupt actions.

According to Cheff, his sentence reflects a "trial penalty" for exercising his constitutional right to proceed to trial. Dkt.#106-1 at 10. That's not so, either.

Cheff 's sentence fell at the low end of the advisory Guidelines range that was applicable based on the facts proven at trial. *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007) ("a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range[.]") Additionally, Cheff's sentence reflects no trial penalty, but his failure, even post-trial, to accept responsibility for his active participation in this conspiracy to deprive people of their civil rights and falsify reports to cover up his illegal acts.  Cheff denied responsibility even in the face of the blatantly falsified police incident report about the illegal search of the Plesinger Place apartment. PSR ¶¶ 48, 64. He went even further by denying having ever performed any illegal stops and searches of vehicles or residences—even though he approved the police incident report related to the search of the Plesinger Place apartment which indicated that he searched it with Bustios and Ramos. PSR fn. 2, Gov. Ex. 103.

Cheff's sentence does not punish his decision to proceed to trial, but properly takes into account that, despite the evidence and the jury's rejection of his defense that he had nothing to do with these crimes, he refuses, even now, to accept responsibility for them.  *See, e.g.*, PSR ¶ 32; fn. 2- 4, 13-17; ¶ 108.  That is the opposite of a substantial issue for appeal. *See United States v. Jahagirdar,* 466 F.3d 149, 157 (1st Cir. 2006) (absence of concern for victim); *United States v. Johnson,* 903 F.2d 1084, 1090 (7th Cir. 1990) (citing cases).

Far from creating a substantial issue, these are the same type of assertions that Cheff unsuccessfully tried to get the jury to accept. They raise no substantial issue.

## Conclusion

None of the issues Cheff has identified qualifies as the sort of substantial issue for appeal required to justify bail pending appeal. Bail should not be granted and his reporting date of November 1, 2022 should not be stayed.

> Respectfully submitted,
> PHILIP R. SELLINGER
> Attorney for the United States
>
> *s/Thomas S. Kearney*
> *s/Bruce P. Keller*
> *s/Jihee G. Suh*
> By: Thomas S. Kearney
> Assistant U.S. Attorney
>
> Bruce P. Keller
> Special Counsel to the U.S. Attorney
>
> Jihee G. Suh
> Assistant U.S. Attorney

Dated: October 19, 2022

13